IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHAD J. CONRAD and JEFFREY A. SCHULTZ, JR.,

    Plaintiffs,

v.

CAPTAIN LEROY DUNAHAY, JR., and
NICHOLAS R. KLIMPKE,

    Defendants.

OPINION and ORDER

17-cv-418-jdp

---

Pro se plaintiffs Chad J. Conrad and Jeffrey A. Schultz are Wisconsin state prisoners. They are proceeding on class-of-one (or in this case, class-of-two) equal protection claims concerning the confiscation of their musical instrument accessories by defendants, Wisconsin Department of Corrections officers at Jackson Correctional Institution (JCI). Conrad also asserts a First Amendment retaliation claim against defendant Leroy Dunahay, Jr. for disposing of some of Conrad's guitar parts and denying him a pair of prescription eyeglasses in retaliation for his confiscation-related complaints.

Defendants have filed a motion for summary judgment on all of plaintiffs' claims. Dkt. 84. After considering the parties' briefs and supporting evidence, I will grant defendants' motion because Conrad and Schultz fail to present evidence from which a reasonable jury could conclude that defendants lacked a rational basis for confiscating their music hobby property. I will also grant defendants' motion on Conrad's retaliation claim because Conrad has failed to present evidence that any of Dunahay's actions were in any way motivated by Conrad's protected activity.

UNDISPUTED FACTS

The following facts are undisputed unless noted otherwise.

A. **Confiscation of plaintiffs' guitar accessories**

Over their years in the Wisconsin state prison system, plaintiffs accumulated electric guitars and related accessories. Conrad acquired an electric guitar, a guitar processor, a foot pedal and AC adaptor, a drum machine, and various guitar cables, patch cords, and gig bags. Schultz acquired an electric guitar, a guitar processor, and other related equipment. In 2007, DOC's Division of Adult Institutions (DAI) changed its music-hobby-property policy by limiting the types of instruments inmates can possess to acoustic guitars, harmonicas, and electronic keyboards. *See* Dkt. 85-5, at 3 (DAI Policy 309.36.01(III)). But the policy included a grandfather clause permitting inmates to retain musical instruments and "required accessories" if that property was acquired prior to July 2007. *See id.* at 6–7 (DAI Policy 309.36.01(VII)(A)).

In June 2015, Conrad was transferred to JCI from Stanley Correctional Institution with his musical hobby property. Defendant Nicholas Klimpke, a correctional officer who was serving as JCI's intake property officer at the time, allowed Conrad to keep his electric guitar but denied him his accessories and equipment. The parties dispute how Klimpke explained this decision to Conrad. Conrad says that Klimpke told him that he and the property sergeant, defendant Leroy Dunahay, had decided to confiscate Conrad's property because of an altercation that Conrad had had with the security director at Stanley Correctional Institution. *See* Dkt. 103, ¶¶ 10, 13. (Conrad provides no further detail about the nature of this altercation.) Defendants say that Dunahay was not involved in the decision to deny Conrad his property, and that Klimpke's decision was motivated by his belief that the items in question were not

"required accessories" permitted under the grandfather clause. Dkt. 88, ¶¶ 6, 8. They say that Klimpke's interpretation was consistent with the understanding of JCI's Institution Complaint Examiner (ICE), who had been told in 2011 by the ICE at a different correctional institution that electric guitar processors were not required to play the electric guitar. Dkt. 107, ¶¶ 10–13; Dkt. 85-8 (email exchange between the ICEs). Conrad filed numerous complaints challenging the denial, including a state court writ of certiorari, all of which were unsuccessful.

Schultz had a similar experience after he was transferred to JCI. In September 2016, he was told by Klimpke that he would be allowed to keep his electric guitar but not his processor, as it was not deemed a "required accessory" for the guitar. Dkt. 94, ¶ 10. Schultz challenged the denial administratively and with a writ of certiorari in Dane County Circuit Court. He ultimately prevailed in the circuit court and JCI returned his processor to him.

**B. Alleged retaliation by Dunahay**

Plaintiff Conrad also brings First Amendment retaliation claims against Dunahay based on his allegation that Dunahay disposed of some of his confiscated guitar parts and denied him prescription eyeglasses as punishment for filing complaints and a state court lawsuit about the confiscation of his music hobby property. The parties dispute many of the related facts.

First is the matter of the lost guitar parts. Defendants say that after Conrad's music hobby property was confiscated, Dunahay met with Conrad so that Conrad could decide how he wanted the confiscated property to be handled. According to Dunahay, Conrad told him that he had no use for certain old guitar parts that he had replaced before coming to JCI, so he asked Dunahay to dispose of them. Dkt. 107, ¶ 25. Conrad denies that this meeting ever took place and says that he never communicated, verbally or otherwise, that Dunahay had permission to dispose of his property. *Id.* ¶¶ 22, 25. But it is undisputed that Dunahay disposed

of those guitar parts, and that JCI later partially reimbursed Conrad for them after it could not find documentation showing that Conrad had requested their disposal. *Id.* ¶ 27.

Second is the matter of the prescription eyeglasses. It is undisputed that Dunahay denied Conrad a pair of prescription eyeglasses that he ordered in 2016, explaining on the denial form that they were "not allowed per security director." *Id.* ¶ 29. The motive for the denial is disputed. Dunahay says that he and the security director were concerned about the glasses because they were designed to rest on the forehead in a way that could impede the effective use of a chemical agent. Conrad says that Dunahay's explanation is pretextual, and that confiscating the glasses was simply another way that Dunahay tried to punish him for complaining about the denial of his musical hobby property. *Id.* ¶¶ 30, 32.

ANALYSIS

Defendants move for summary judgment on all of plaintiffs' claims. A court must grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The court must view the evidence in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court's role at summary judgment is to decide "whether, based on the evidence of record, there is any material dispute of fact that requires a trial," not "'to sift through the evidence, pondering the nuances and inconsistencies, and decide who to believe.'" *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)).

### A. Class-of-one equal protection claims

The theory underlying an ordinary equal protection claim is that the plaintiff was denied equal treatment because of his membership in an "identifiable group." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). Conrad and Schultz do not suggest that defendants confiscated their music hobby property for that reason. Instead, they say that they were singled out for worse treatment than other prisoners, which is a "class-of-one" equal protection claim. *See D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

"The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.'" *Swanson v. City of Chetek*, 719 F.3d 780, 783–84 (7th Cir. 2013) (citing *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)). It is not yet clear whether such claims are cognizable in the prison context. Some courts have determined that class-of-one claims are not available to prisoners challenging arbitrary treatment by prison officials as a matter of law, because highly discretionary decision-making is inherent in prison management. *See, e.g., Glassey v. Ryan*, No. CV1201490PHXPGRESW, 2016 WL6080672, at *4 (D. Ariz. Mar. 7, 2016) (collecting cases from various circuits). At the screening stage, I have generally allowed prisoners to proceed on such claims, although I have emphasized that they face an uphill battle at summary judgment.

As I explained in an earlier screening order in this case, Dkt. 21, the required elements of class-of-one claims are not entirely clear. *See Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 891 (7th Cir. 2012) (court split three ways on the standard applicable to a class-of-one claim). Despite the lingering uncertainty, it is established that to survive summary judgment,

plaintiffs must demonstrate at a minimum (1) that defendants intentionally treated them differently from others similarly situated and (2) that there is no rational basis for the difference in treatment. *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). (Whether plaintiffs ought to be required to prove that defendants had some illegitimate motive is the uncertain point. *Del Marcelle*, 680 F.3d at 912 (Wood., J., dissenting).) Here, both plaintiffs make a plausible showing on the first element. But both plaintiffs fail to demonstrate that defendants lacked a rational basis for denying them their music hobby property, so their class-of-one claims fail.

1. **Intentionally treated differently from others similarly situated**

Conrad and Schultz say that they were intentionally treated differently from others similarly situated because their music hobby property was confiscated while other inmates were permitted to keep similar items. As evidence, they allege in declarations that defendants permitted other JCI inmates to keep the same or similar items. *See* Dkt. 94, ¶¶ 22, 25, 31, 34–36 and Dkt. 103, ¶¶ 42, 45, 60–61. They point specifically to four such inmates. Three of those inmates were permitted to keep various electric guitar accessories until 2017, when those items were ultimately confiscated. *See* Dkt. 93-1, at 32–35; Dkt. 96 (declaration from inmate indicating that he was permitted to retain possession of a V-amp at JCI between 2013 and 2017, when it was confiscated). But plaintiffs provide no evidence that defendants Klimpke and Dunahay were in any way involved in the initial decisions to allow these three inmates to retain their music hobby property, so this evidence does not help them meet the first element.

But plaintiffs do provide evidence that at least one defendant—Dunahay—was involved decision to permit a fourth inmate to keep the type of music hobby property that plaintiffs were denied. *See* Dkt. 93-1, at 2 (property receipt/disposition form granting inmate permission to keep "foot processor" in 2012, which bears Dunahay's signature). Defendants insist that

6

Dunahay was not involved in the decision to deny either plaintiff his music hobby property, so the next question is whether plaintiffs have provided evidence of Dunahay's involvement in their cases.

It is undisputed that it was Klimpke who communicated to each plaintiff that his property was being confiscated. Conrad says that Klimpke told him in the course of explaining why he was denying him his property that Klimpke "and the property sergeant (Defendant Dunahay) decided that because of the events which had taken place prior to [Conrad's] transfer to JCI, that [his] property was being denied." Dkt. 103, ¶ 13. Schultz says that "Dunahay and Klimpke perpetrated to intentionally deny [his] musical property upon [his] arrival to JCI," Dkt. 94, ¶ 26, but he provides no further explanation of how Dunahay was involved. Nonetheless, construing the evidence in the light most favorable to the plaintiffs, I conclude that both plaintiffs have made a sufficient showing that Dunahay treated other inmates differently than he treated them.

This leaves Klimpke, who says that he does "not recall ever allowing another inmate to possess a guitar processor." Dkt. 88, ¶ 10. Neither plaintiff rebuts this assertion with specific evidence that Klimpke made inconsistent decisions as to other inmates. But plaintiffs can nonetheless prevail on the first class-of-one element if they can provide evidence that, in dealing with plaintiffs, Klimpke deviated from what would have otherwise been his usual protocol. *See Geinosky v. City of Chicago*, 675 F.3d 743, 748 (7th Cir. 2012) (if allegations signal that the plaintiff alone suffered the defendant's harassment, there is no need to identify a comparator to assert a class-of-one claim).

Here, again construing the evidence in Conrad's favor, he provides evidence that Klimpke treated him differently than other similarly situated inmates. Specifically, he says that

7

Klimpke told him that he was denying Conrad his property "because of the events which had taken place prior to [Conrad's] transfer to JCI." Dkt. 103, ¶ 13. Credited as true, this statement could lead a reasonable jury to infer that it would not have been Klimpke's normal policy to deny inmates this type of music hobby property, and that he was singling out Conrad for adverse treatment. So Conrad has made the requisite showing under the first class-of-one element as to Klimpke.

Schultz does not allege that Klimpke made any comparable statement to him in explaining why his music hobby property was being denied. But a reasonable jury could still infer that Klimpke intentionally treated Schultz differently based on the evidence provided by Conrad. Conrad provides evidence that, in the course of confiscating his property, Klimpke implied that his normal policy would be to permit inmates to keep such property. Klimpke confiscated Schultz's property a few months later, and nothing that happened in the interim undermines Conrad's evidence of Klimpke's normal policy. A reasonable jury could infer from this that Klimpke was also singling out Schultz for adverse treatment, even though Schultz provides no evidence that Klimkpe made comments to that effect. There are other inferences that one could draw from this evidence—a reasonable jury could also infer that Klimpke's decision to treat Schultz the same as Conrad actually undermines Conrad's evidence that he was singled out. Nonetheless, construing things in the light most favorable to the plaintiffs, I deem the evidence sufficient to meet the first class-of-one element for both Schultz and Conrad.

2. **Rational basis for difference in treatment**

The next question is whether there was any rational basis for the difference in treatment. The traditional rational basis test asks only "whether a rational basis can be conceived, not

whether one is established on the record or occurred to a defendant." *Del Marcelle*, 680 F.3d at 900 (Easterbrook, J., concurring). "[A] class-of-one plaintiff must, to prevail, negat[e] any reasonably conceivable state of facts that could provide a rational basis for the classification." *Scherr v. City of Chi.*, 757 F.3d 593, 598 (7th Cir. 2014) (internal quotations, citations, alterations omitted); *see also Fares Pawn, LLC v. Indiana Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014) ("If we can come up with a rational basis for the challenged action, that will be the end of the matter . . . .").

Here, plaintiffs cannot make the required showing. Indeed, the record suggests that defendants had a perfectly rational justification: they believed that the items in question were not required to play the electric guitar and thus not allowed under the musical hobby property policy. *See* Dkt. 107, ¶¶ 6–8. This particular interpretation of the policy's application to guitar processors was communicated to officials at JCI as early as 2011. *See* Dkt. 107, ¶¶ 10–13; Dkt. 85-8. That it appears to have been applied inconsistently on one occasion in 2012, *see* Dkt. 93-1, at 2 (property receipt/disposition form granting inmate permission to keep "foot processor"), does not mean that the interpretation is devoid of any rational basis. It simply means that, for whatever reason, one inmate avoided its application in a prior instance.

Plaintiffs argue that that an electric guitar is useless without a processor, which would undermine the rationality of confiscating their music hobby property. *See* Dkt. 106, ¶ 2. The primary purpose of a processor is to modify the sound of the electric guitar, but it can also be used to send the signal to headphones so that one could hear the guitar as he plays. Dkt. 90, ¶ 9; Dkt. 85-9, at 8. Inmates aren't allowed amplifiers in their cells, so without a processor, plaintiffs argue, one can't really play an electric guitar. But a decision can be incorrect without being irrational, so defendants' factual mistake about electric guitars would not make their

9

decision irrational. More important, defendants' policy interpretation was not mistaken. In 2011, information about electric guitar operation was provided to JCI by James Muenchow, an ICE from Waupun Correctional Institution. Muenchow explained that playing an electric guitar without electricity—which is to say without a processor or amplifier—will make an audible if faint sound, so a guitarist can still play. Dkt. 107, ¶ 16. And JCI has a music room with electric guitar processors and amplifiers available for inmate use, so JCI inmates can use their electric guitars as electric guitars without owning processors of their own. *Id.* ¶ 1. The decision to confiscate plaintiffs' processors might not be strictly required under the policy, and it might not be entirely fair or wise, but it was certainly not irrational.

Plaintiffs contend that Klimpke's statement that he was denying Conrad his property to punish him for the prior altercation with the SCI security director is evidence of personal animus that undermines any possible good-faith rational basis for the confiscation. *See* Dkt. 100, at 7. But the personal motivation of defendants is beside the point. Even if defendants' true motives were improper, their actions were not irrational. "It is not enough for a complaint to suggest an improper motive, for a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity." *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) (quoting *Fares Pawn*, 755 F.3d at 845). "[A]nimus . . . comes into play only when, *no rational reason or motive being imaginable for the injurious action taken by the defendant against the plaintiff*, the action would be inexplicable unless animus had motivated it." *Scherr,* 757 F.3d at 598 (emphasis in original) (citations and internal quotation marks omitted). Here, there is a conceivable rational basis for defendants' confiscation of plaintiffs' music hobby property, so the inquiry stops

there. Because there is a conceivable rational basis for defendants' decision to confiscate plaintiffs' musical hobby property, plaintiffs' class-of-one claims must be dismissed.

**B. Conrad's First Amendment retaliation claim against Dunahay**

Conrad alleges that Dunahay retaliated against him by disposing of some of his guitar parts and by denying him the prescription eyeglasses of his choice. But he has failed to demonstrate that these actions were undertaken as a result of Conrad's protected activity, so these claims likewise must be dismissed.

To prevail on a First Amendment retaliation claim, a plaintiff must identify (1) the constitutionally protected activity in which he was engaged; (2) one or more retaliatory actions taken by the defendant that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) sufficient facts to make it plausible to infer that the plaintiff's protected activity was one of the reasons defendant took the action he did against him. *Bridges v. Gilbert*, 557 F.3d 541, 556 (7th Cir. 2009). Neither party disputes the first element because Conrad engaged in constitutionally protected activity when he filed grievances and lawsuits related to the confiscation of his music hobby property. Only the second two elements are in dispute.

As to the second element, defendants contend that neither of the allegedly retaliatory actions were the sort that might deter a person of ordinary firmness from exercising his First Amendment rights. This might be true about the denial of Conrad's preferred style of eyeglasses, which is too minor deprivation to implicate the First Amendment. *See Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) ("[T]rivial harms, petty slights, [and] minor annoyances" do not rise to the level of a materially adverse action necessary to sustain a retaliation claim). But the same cannot be said about the disposal of Conrad's guitar parts.

Dunahay disposed of the following items: a string tree (valued at $5.37); a hipshot tremsetter ($39.55); tuner keys ($68.62); and string waver saddles ($49.22). *See* Dkt. 113, at 12. JCI ultimately reimbursed Conrad for these items, but at only a portion of their original value. *See id.* at 71. A reasonable jury might well conclude that the destruction of more than a hundred dollars' worth of an inmate's personal property would deter a person of ordinary firmness from exercising his First Amendment rights. Conrad has established the second element, at least for the disposal of his guitar parts.

But Conrad fails to make a showing as to the third element, because he provides no evidence that Dunahay's actions were motivated by Conrad's protected activity. Conrad offers no specific evidence from which a jury could infer that Dunahay's denial of the eyeglasses was related to his protected activity. He simply asserts that "[b]ecause there were no security reasons given . . . by Dunahay to justify the denial, [Conrad] inferred his reasoning to be retaliatory in nature." Dkt. 103, ¶ 56. But to survive summary judgment on a retaliation claim, a plaintiff must do more than speculate. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (explaining that speculation and hunches about defendant's motives cannot defeat summary judgment).

Conrad has one bit of evidence about the disposal of his guitar parts. He says that Dunahay commented, "if I have anything to say about it, you will never see a penny for those [lost guitar] parts." Dkt. 103, ¶ 39. This statement shows that Dunahay did not want Conrad to receive compensation for the guitar parts. But it shows nothing about whether Dunahay's initial disposal of the parts was motivated by Conrad's protected activity. And Conrad points to no other evidence that would support an inference that Dunahay's actions were retaliatory. He simply states that Dunahay acted "[b]ecause of [his] numerous complaints." Dkt. 103,

¶ 50. Such a conclusory statement is not enough; Conrad's retaliation claims must be dismissed.

ORDER

IT IS ORDERED that defendants Leroy Dunahay, Jr. and Nicholas R. Klimpke's motion for summary judgment, Dkt. 84, is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

Entered February 11, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge